

# FILED

FEB 11 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-19-1187-SFB |
| HELENA PEREZ REILLY, | Bk. No. 3:18-bk-05319-DPC |
| Debtor. | Adv. No. 3:19-ap-00008-DPC |
| HELENA PEREZ REILLY, | |
| Appellant, | |
| v. | MEMORANDUM* |
| WELLS FARGO BANK, N.A., | |
| Appellee. | |

Submitted Without Oral Argument
on January 30, 2020

Filed – February 11, 2020

Appeal from the United States Bankruptcy Court
for the District of Arizona

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Daniel P. Collins, Bankruptcy Judge, Presiding

———

Appearances:      Appellant Helena Perez Reilly, pro se, on brief; Andrew M. Jacobs and Daniel J. Inglese of Snell & Wilmer L.L.P. on brief for appellee.

———

Before: SPRAKER, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Helena Perez Reilly commenced an adversary proceeding challenging Wells Fargo Bank's secured claim. The bankruptcy court ultimately granted Wells Fargo's Civil Rule 12(b)(6) motion to dismiss Reilly's first amended complaint without leave to amend. Reilly appeals the dismissal order and the order denying her Rule 9023 motion.

Reilly's first amended complaint was premised on two legal theories. First, she posited that Wells Fargo was required to record an assignment of deed of trust in order to perfect its security interest in her residence. According to Reilly, because Wells Fargo did not do so, its claimed security interest in her residence was invalid and unenforceable. Second, she

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Evidence Rule" references are to the Federal Rules of Evidence.

insisted that the discharge she received in her prior chapter 7 case extinguished both Wells Fargo's lien as well as the underlying debt.

Because neither of these theories could support a legally cognizable claim for relief, the bankruptcy court correctly dismissed her first amended complaint. Amendment of her complaint could not cure the fatal defects in these legal theories. Accordingly, the bankruptcy court was not obligated to grant leave to amend.

Therefore, we AFFIRM.

## FACTS

Reilly commenced her first chapter 7 case in July 2011. She listed Wachovia Mortgage as a secured creditor with a security interest in her residence in Flagstaff, Arizona.[2] In April 2012, the bankruptcy court granted Reilly a discharge of her debts.

Reilly commenced her second chapter 7 bankruptcy in May 2018, and later converted the case to chapter 13. She listed Wells Fargo as a secured creditor with a lien on her residence in the amount of $378,570.00. Though she did not list this claim as contingent or disputed, her chapter 13 plan did not provide for any payments either inside or outside of the plan on account of this secured claim.

---

[2] We have exercised our discretion to review Reilly's bankruptcy and adversary proceeding dockets. *Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 984 (9th Cir. 1997); *Mullis v. Bankruptcy Ct.*, 828 F.2d 1385, 1388 & n.9 (9th Cir. 1987).

Wells Fargo filed a proof of claim in the amount of $371,810.67, claiming a lien against Reilly's residence. Wells Fargo attached to the proof of claim a copy of an Adjustable Rate Mortgage Note dated September 11, 2006, for $396,500.00, naming Reilly as the borrower and World Savings Bank, FSB, its successors, and/or assignees, as the lender. The note's signature page includes a signature for the borrower. On the back of the signature page is an endorsement by Brenda Flores as "Vice President of Loan Documentation," making the note payable to "Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., F/K/A Wachovia Mortgage, FSB, F/K/A World Savings Bank, FSB."

Wells Fargo also attached to its proof of claim a deed of trust, which on its face shows that it was recorded on September 29, 2006 in the Official Records of Coconino County, as instrument number 3405021. The deed of trust similarly identifies Reilly as the borrower. And once again World Savings, its successors, and/or assignees are identified as the lender. The deed of trust grants the lender a security interest in Reilly's residence to secure repayment of Reilly's promissory note in favor of World Savings.

Wells Fargo further attached to its proof of claim a letter dated November 19, 2007, from the Office of Thrift Supervision ("OTS") to John A. Stoker as Vice President and Assistant General Counsel of Wachovia Corporation. The letter reflects OTS's approval of World Savings' amendment of its charter and bylaws to change its name to Wachovia

4

Mortgage, FSB, effective as of December 31, 2007.

The final document attached to the Proof of Claim is a Certification by the Office of Comptroller of the Currency ("OCC") dated November 1, 2009, certifying the merger of Wachovia Mortgage with and into Wells Fargo Bank, National Association, effective as of November 1, 2009.

Reilly commenced an adversary proceeding against Wells Fargo to determine the validity, priority or extent of Wells Fargo's lien. In relevant part, Reilly's original four-page complaint alleged that "Wells Fargo fails to provide any documentation whatsoever that supports its allegation that it is a secured creditor." As Reilly phrased it, because the September 2006 deed of trust identified World Savings as the lender, "Wells Fargo is required to show proof of assignment of mortgage, and has not." In addition, Reilly alleged that the discharge she received in her 2011 bankruptcy case extinguished both Wells Fargo's lien and the underlying debt: "Wells Fargo admits to the discharge. This action reflects that Plaintiff's debt has been eliminated. Therefore defendant is not a creditor."

Wells Fargo filed a motion to dismiss under Civil Rule 12(b)(6). Reilly filed an opposition to the motion to dismiss but also filed a first amended complaint. In her first amended complaint, Reilly included a host of additional allegations. Many related to World Savings' alleged practice of securitizing the loans it originated. Other allegations effectively asserted that, absent proof of a recorded assignment of deed of trust, Wells Fargo

5

could not establish that it was World Savings' successor with respect to the security interest in Reilly's residence. Reilly also alleged that the security interest in her residence was discharged by her 2011 bankruptcy.[3] In sum, though the first amended complaint contained numerous additional allegations, its gravamen was not markedly different from the original complaint. Both complaints focused on the purported need of Wells Fargo to produce a recorded assignment of the deed of trust and the effect of the discharge in Reilly's 2011 case.

In response to the first amended complaint, Wells Fargo filed its second motion to dismiss. Wells Fargo argued that it was Wachovia's successor by merger and that Wachovia was the same entity as World Savings by virtue of a name change. According to Wells Fargo, the documents attached to its proof of claim established that it was the successor in interest to World Savings, and lienholder of record with respect to Reilly's residence as a result of the recorded deed of trust. As for the effect of Reilly's prior chapter 7 discharge, Wells Fargo cited *Johnson v. Home State Bank*, 501 U.S. 78 (1991), for the proposition that the lien against Reilly's residence survived the discharge of the underlying debt.

Reilly did not file a formal opposition to the second motion to dismiss. But she did file a motion to strike. She claimed that the second

---

[3] Reilly admitted in her first amended complaint that, in September 2006, she obtained a mortgage from World Savings encumbering her residence.

motion to dismiss was untimely filed and contravened Civil Rule 12(g)'s prohibition against successive motions to dismiss. She also directly challenged each of the assertions Wells Fargo made in its second motion to dismiss.

Reilly filed a motion for an order to show cause the same day that she filed her motion to strike. In relevant part, Reilly insisted that Wells Fargo needed to present evidence to authenticate the documents it had attached to its proof of claim.

Reilly additionally filed a motion for judgment on the pleadings. This motion largely reiterated all of the points Reilly had made in her other papers filed in the adversary proceeding.

On June 21, 2019, the bankruptcy court held a hearing on all of the above-referenced motions. The bankruptcy court specifically rejected both of Reilly's foundational legal theories underlying her first amended complaint. The court ruled that a recorded assignment of the deed of trust was unnecessary in light of World Savings' name change to Wachovia and Wachovia's merger into Wells Fargo. The court further ruled that Wells Fargo's lien survived Reilly's prior chapter 7 discharge. Based on these rulings, the court granted Wells Fargo's second motion to dismiss and denied all of Reilly's pending motions.

Reilly then filed a motion for reconsideration under Rule 9023. In the reconsideration motion, Reilly reiterated the points she had made in her

7

prior papers.

On July 15, 2019, the bankruptcy court entered an order granting the second motion to dismiss and denying Reilly's motions. Reilly timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (K). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Whether the bankruptcy court committed reversible error when it dismissed Reilly's first amended complaint without leave to amend?

2. Whether the bankruptcy court abused its discretion when it denied Reilly's reconsideration motion?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's order granting a Civil Rule 12(b)(6) motion to dismiss. *See Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1079 (9th Cir. 2005). When we review a matter de novo, we consider the matter anew, as if not previously decided by the bankruptcy court. *Mele v. Mele (In re Mele)*, 501 B.R. 357, 362 (9th Cir. BAP 2013).

Generally speaking, we review the bankruptcy court's denial of leave to amend for an abuse of discretion. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). We also review the denial of a Rule 9023 motion for an abuse of discretion. *Dicker v. Dye (In re Edelman)*, 237 B.R. 146, 150 (9th

8

Cir. BAP 1999).

The bankruptcy court abuses its discretion when its decision is based on an incorrect rule of law or on factual findings that are clearly erroneous. *United States v. Hinkson*, 585 F.3d 1247, 1261–63 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. Civil Rule 12(b)(6) Standards.

A Civil Rule 12(b)(6) dismissal motion can challenge a complaint in two different ways: (1) whether the complaint presents any cognizable legal theories; and (2) whether the complaint contains sufficient factual allegations that, if accepted as true, support those legal theories. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). In other words, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 989 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

Thus, the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the **reasonable** inference that the defendant is [legally] liable for the misconduct alleged."

9

*Id.* (emphasis added). The plausibility determination is a "context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* When the "well-pleaded facts" do not enable the court to reasonably infer "more than the mere possibility of misconduct," the complaint does not sufficiently allege that the plaintiff is entitled to relief. *Id.*

Generally, courts must accept the well pled factual allegations of the complaint as true. *Newcal Indus., Inc. v. Ikon Office Sols.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). However, courts should not accept as true conclusory allegations or statements of the law cast as factual allegations. *See Twombly*, 550 U.S. at 555–56. Nor should the court accept as true "unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

There is another important exception to the rule of accepting a complaint's factual allegations as true. Though the Civil Rule 12(b)(6) inquiry generally is limited to the allegations set forth in the complaint, the court is permitted to consider items properly subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

10

201(b). When the complaint's allegations are at odds with matters that are properly the subject of judicial notice, the court need not accept those allegations as true when considering a motion to dismiss. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

## B.     Reilly's Legal Theories In Support Of Her Claims For Relief.

In support of her dismissed claims for relief, Reilly's appeal brief principally focuses on two legal theories. First, she claims that Wells Fargo should have but failed to record an assignment of the deed of trust she executed in favor of World Savings. And second, she claims that, in her 2011 bankruptcy case, her chapter 7 discharge extinguished both the lien and the underlying debt. We will address each of these arguments in turn.

### 1.     Failure To Perfect Assignment Of The Deed Of Trust.

Reilly primarily argues that Wells Fargo is not a secured creditor and cannot assert or enforce its lien against her residence because it never perfected an assignment of the deed of trust she executed in favor of World Savings. According to Reilly, when a security interest in real property is acquired by assignment, the assignee must perfect its security interest by recording an assignment of mortgage or deed of trust.

Reilly's lack of perfection argument is factually unfounded. Wells Fargo did not take its interest in the deed of trust by assignment. Wells Fargo succeeded to its interest in Wachovia's assets as the result of Wachovia's merger into Wells Fargo. The occurrence of this merger is not

11

subject to reasonable dispute and hence is properly subject to judicial notice. Numerous courts have recognized that this merger occurred.[4] And the copy Wells Fargo submitted of the official OCC certificate of merger similarly is subject to judicial notice. *Graybill*, 953 F. Supp. 2d at 1093 n.2; *Ferguson v. Wells Fargo Bank, N.A.*, Case No. 2:12-2944 WBS, 2013 WL 504709, at *2–3 (E.D. Cal. Feb. 8, 2013); *Perez v. Wachovia Mortg.*, Case No. C 12-03407 RS, 2012 WL 12920635, at *2 (N.D. Cal. Nov. 29, 2012).

It is well settled that, when a merger occurs, the surviving entity acquires the assets and liabilities of the constituent entity. 15 William M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 7082 (Sept. 2019 update) ("When corporations merge, the surviving corporation succeeds to both the rights and obligations of the constituent corporations.") (citing numerous cases); *see also Carroll v. PNC Bank*, Case No. A-13-CV-657 LY, 2014 WL 12530951, at *2 (W.D. Tex. June 24, 2014), *report and recommendation adopted*, Case No. A-13-CV-657-LY, 2014 WL 12531367

---

[4] *See, e.g.*, *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 967 (9th Cir. 2017) ("in 2008, Wells Fargo acquired Wachovia, including Wachovia Mortgage"); *Kuzack v. Wells Fargo Bank, NA*, 597 F. App'x 424 (9th Cir. 2015) (identifying Wachovia as Wells Fargo's "predecessor-in-interest"); *Graybill v. Wells Fargo Bank, N.A.*, 953 F. Supp. 2d 1091, 1093 n.2 (N.D. Cal. 2013) ("Wachovia [Mortgage] converted to a national bank called Wells Fargo Bank Southwest, NA, which then merged with and into Wells Fargo Bank, NA.); *Toromanova v. Wells Fargo Bank, N.A.*, Case No. 12-CV-00328-GMN-CWH, 2012 WL 2389661, at *1 (D. Nev. June 25, 2012) ("Wachovia Mortgage merged with and into Wells Fargo Bank, N.A. and is now known as Wachovia Mortgage, a Division of Wells Fargo Bank, N.A.").

(W.D. Tex. Aug. 4, 2014) (holding that all rights of the merger parties were vested in the surviving entity without the need for any formal assignment); *SE Prop. Holdings, LLC v. Sandy Creek II, LLC*, 954 F. Supp. 2d 1322, 1348 (S.D. Ala. 2013) (same).

In turn, Wachovia was the successor to World Savings by virtue of a name change. The letter Wells Fargo provided from the OTS reflecting this fact also is properly the subject of judicial notice. *Graybill*, 953 F. Supp. 2d at 1093 & n.2; *Ferguson*, 2013 WL 504709, at *1–4. When a corporation changes names, it is still the same corporation, with all the same rights and liabilities. 6 William M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 2456 (Sept. 2019 update).

In her first amended complaint, Reilly acknowledges that she obtained a "mortgage" from World Savings. For this reason, she does not deny executing the note and deed of trust in favor of World Savings. Rather, she challenges Wells Fargo's interest in these documents. But Wells Fargo has provided a clear and indisputable line of succession from World Savings to Wachovia, and then to Wells Fargo – without the need for any formal assignment of assets from either World Savings or Wachovia to Wells Fargo. Accordingly, to the extent Reilly relies on the absence of a perfected assignment of deed of trust to support her claim for relief against Wells Fargo, her claim for relief is devoid of merit.

**2.      Effect Of Reilly's Chapter 7 Discharge On Wells Fargo's Lien.**

Alternately, Reilly contends that, as result of the discharge she received in her chapter 7 bankruptcy, the lien on her residence was extinguished.[5] To support her contention, Reilly relies on *Johnson v. Home State Bank*, 501 U.S. 78 (1991). But Reilly's reliance on *Johnson* is misplaced. *Johnson* held that the chapter 7 discharge extinguishes the debtor's personal liability for the underlying debt, but the creditor's rights under the mortgage or deed of trust against the collateral securing the debt survive and pass through bankruptcy. *Id.* at 82-83.

Indeed, *Johnson* is directly on point **against** Reilly. In *Johnson*, the debtor had, similar to Reilly, received a chapter 7 discharge. The Supreme Court was confronted with the question of whether the secured creditor's lien rights survived the discharge and, if so, whether those lien rights constituted a "claim" that could be scheduled and adjusted in the debtor's subsequent chapter 13 bankruptcy case. *Id.* at 80-81. The Supreme Court

---

[5] Reilly further asserts that she asked Wells Fargo in 2011 to enter into a reaffirmation agreement with her, but Wells Fargo refused. Essentially, Reilly seems to believe that Wells Fargo's lien against her residence only could have survived her 2011 chapter 7 discharge if a reaffirmation agreement had been entered into. This is not correct. "Since liens ordinarily survive bankruptcy regardless of reaffirmation, the reaffirmation of a secured debt has the main effect of preserving the debtor's personal liability for the debt." *In re Roderick*, 425 B.R. 556, 563 (Bankr. E.D. Cal. 2010). While we agree that Reilly's personal liability to Wells Fargo was discharged in her first bankruptcy, the existence or absence of a reaffirmation agreement under § 524(c) does not affect the survival of the lien.

held that the secured creditor's lien rights survived the chapter 7 discharge and that those lien rights constituted a "claim" for bankruptcy purposes that was subject to adjustment in the subsequent chapter 13. *Id.* at 84-87. In so holding, *Johnson* explained that the "bankruptcy discharge extinguishe[d] only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem." *Id.* at 84.

In short, Reilly's argument that Wells Fargo's lien was extinguished when she received her prior chapter 7 discharge has no merit. The argument is based on her misreading of *Johnson*, which actually held that the lien survives the discharge of the underlying debt.

## C. Reilly's Other Arguments.

Most of Reilly's other arguments on appeal are procedural in nature and have little or nothing to do with the substantive legal theories she asserted in her complaint, which theories all sought to invalidate Wells Fargo's lien. She asserts that the bankruptcy court should have granted her motion for judgment on the pleadings and her motion to strike Wells Fargo's second motion dismiss. As Reilly reasons, the bankruptcy court should have granted her motions for two reasons: (1) Wells Fargo's second motion to dismiss constituted an impermissible successive motion to dismiss in contravention of Civil Rule 12(g)(2); and (2) the second motion to dismiss was untimely.

Neither of these reasons is well founded. When Reilly filed her first amended complaint, Well Fargo needed to – and was entitled to – respond to it. *See* Civil Rule 15(a)(3); *see also* Virginia A. Phillips, et al., Rutter Group Prac. Guide: Fed. Civ. P. Before Trial ¶ 6:22 (Apr. 2019 Update) ("Rutter Group") ("If plaintiff amends the complaint, defendant must respond to the amended complaint (unless the court allows the original answer to stand as answer to the amended complaint)."). Under Civil Rules 12(g)(2) and (h)(1), a defendant may forfeit a defense under Civil Rules 12(b)(2)-(5) if it was available but not raised in the defendant's first motion to dismiss. *See Schnabel v. Lui*, 302 F.3d 1023, 1034 (9th Cir. 2002); *see also* Rutter Group at ¶ 9:25.10 ("The filing of an amended complaint does not revive the right to present defenses waived prior to the amendment if such defenses were available prior to the amendment.").

Reilly filed her first amended complaint rather than oppose the original motion to dismiss. As a result, the court never ruled upon the original motion. Wells Fargo had the right to respond to the first amended complaint under Civil Rule 15(a)(3). It filed the second motion to dismiss after the first amended complaint mooted the original motion. The second motion to dismiss largely incorporated the original motion. In this regard, Wells Fargo did not seek to litigate successive motions but to have its original defenses decided for the first time. We thus reject Reilly's argument based on Civil Rule 12(g).

As for Reilly's timeliness argument, she correctly points out that Wells Fargo did not timely file its second motion to dismiss. It was not filed within either fourteen days after service of Reilly's first amended complaint, or within the time to respond to Reilly's original complaint. *See* Civil Rule 15(a)(3). Even so, this does not mean that Wells Fargo thereafter was prohibited from filing its second motion to dismiss. If Reilly sought to prohibit Well Fargo from responding to her first amended complaint, her recourse was to seek entry of default. *See* Civil Rule 55; *see also* Rutter Group at ¶ 6:42 ("Entry of a defendant's default cuts off his or her right to appear in the action or to present evidence."). But Reilly did not do so. As a result, Wells Fargo permissibly filed its belated second motion to dismiss, and the bankruptcy court was not obliged to strike it based on Reilly's untimeliness argument. *See Sugarfina, Inc. v. Sweet Pete's LLC*, Case No. 17-CV-4456-RSWL-JEM, 2017 WL 4271133, at *3 (C.D. Cal. Sept. 25, 2017) (holding that default cannot be entered after defendant has a filed a Civil Rule 12(b)(6) motion to dismiss shortly after the deadline for responsive pleadings); *Aguilera v. Bigham*, Case No. 2:15-cv-1781-KJM-EFB PS, 2016 WL 4540834, at *1 (E.D. Cal. Aug. 30, 2016) (same).

Accordingly, Reilly has not demonstrated that the bankruptcy court committed reversible error when it denied her motion for judgment on the pleadings and her motion to strike Wells Fargo's second motion to dismiss.

Reilly next argues that the bankruptcy court should have held an

17

evidentiary hearing and should have required Wells Fargo to authenticate the documents attached to its proof of claim. In support of these arguments, Reilly invokes Rule 3001 and Evidence Rule 901(a).[6] Rule 3001 specifies the form and content required for filing a proof of claim. Among other things, this Rule provides that claims based on a writing should include a copy of that writing or writings. Rule 3001(c)(1). Under Rule 3001, a claimant also must submit additional information when the claim asserts a security interest in the debtor's principal residence. *See* Rule 3001(c)(2)(C); Official Form B410.

On its face, Wells Fargo's Proof of Claim satisfies the form and content requirements set forth in Rule 3001. Consequently, Wells Fargo was entitled to the presumption of prima facie validity of its claim in the amount stated. Rule 3001(f). Therefore, if the bankruptcy court had held a claim objection evidentiary hearing, Reilly would have needed to present evidence "show[ing] facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000). In this instance, Reilly's first amended complaint did not allege facts that, even if accepted as true, would have been sufficient to overcome the presumption

---

[6] Reilly actually cited Evidence Rule 902, which governs self-authenticating documents. Instead of Evidence Rule 902, Reilly presumably meant to invoke Evidence Rule 901(a), which sets forth the general authentication requirement for documentary evidence.

of the validity of Wells Fargo's claim.

As for Evidence Rule 901(a), it provides that a proponent of documentary evidence generally must "produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Reilly has not cited any authority indicating why either of these rules pertain to a Civil Rule 12(b)(6) motion to dismiss. Nor are we aware of any such authority. Indeed, other than matters properly subject to judicial notice, evidence plays no role in the resolution of a motion to dismiss because such motions examine only the sufficiency of allegations and legal theories set forth in the complaint. They do not involve the presentation of, or objections to, evidence. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d at 1121-22.

Put differently, there was no need for the bankruptcy court to hold an evidentiary hearing or to require Wells Fargo to authenticate either the OCC certificate of merger or the OTS letter regarding World Savings' name change. Those documents and their contents reflected official acts of the executive branch of the United States and as such the bankruptcy court properly took judicial notice of the truth of those matters. *Graybill*, 953 F. Supp. 2d at 1093 n.2; *Ferguson*, 2013 WL 504709, at *2. Similarly, the duly recorded deed of trust that Reilly executed in favor of World Savings is part of the official records of Coconino County, is properly subject to judicial notice, and the bankruptcy court properly took judicial notice of

that matter as well. *See Graybill*, 953 F. Supp. 2d at 1093 n.2 (taking judicial notice of recorded deed of trust); *Perez*, 2012 WL 12920635, at *2 (same).

In short, neither Reilly's authentication argument nor her evidentiary hearing argument justify reversal of the order granting Wells Fargo's motion to dismiss.

Finally, Reilly claims that the bankruptcy court should have granted her leave to amend. "'Dismissal without leave to amend is improper, unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" *IntriPlex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (quoting *Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006, 1013 (9th Cir. 2005)). When, as here, the plaintiff is not represented by counsel, the pro se litigant must be afforded an opportunity to amend "unless it is clear the deficiencies cannot be cured by amendment." *McGuckin v. Smith*, 974 F.2d 1050, 1057 & n.6 (9th Cir. 1992), *overruled on other grounds by WICKAM Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

Here, there was nothing Reilly could have alleged, consistent with her existing legal theories and factual allegations, that would have cured the fatal defects we have identified above. "In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal 'without contradicting any of the allegations of [the] original complaint.'" *Cady v.*

*Anthem Blue Cross Life & Health Ins. Co.*, 583 F. Supp. 2d 1102, 1105 (N.D. Cal. 2008) (quoting *Reddy*, 912 F.2d at 296). Given the establishment of Wells Fargo's interest in the recorded deed of trust, and the well established rule that liens survive discharge within bankruptcy, Reilly could not assert any set of facts to cure these deficiencies. Thus, the bankruptcy court did not abuse its discretion when it dismissed Reilly's first amended complaint without leave to amend.

Reilly also appealed from the bankruptcy court's order denying her motion for reconsideration under Rule 9023, which incorporates Civil Rule 59(e). Even though Reilly's appeal brief did not make any arguments with respect to the denial of this motion, we have reviewed Reilly's reconsideration motion. In large part, it merely reiterated the positions she took in all of her other papers and motions that she filed in response to Wells Fargo's second motion to dismiss. Under these circumstances, the bankruptcy court did not commit reversible error when it denied the reconsideration motion. A Rule 9023 motion should not be used to relitigate matters already decided. *In re Upland Partners*, Case No. 97-03746, 2005 WL 3964426, at *1 (Bankr. D. Haw. Dec. 15, 2005); *see also In re Mannie*, 299 B.R. 603, 608 (Bankr. N.D. Cal. 2003) ("A motion to reconsider should not be used to ask the court to rethink what the court had already thought through—rightly or wrongly —or to reiterate arguments previously raised") (citations and internal quotations omitted) .

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order dismissing Reilly's first amended complaint without leave to amend, and its order denying Reilly's reconsideration motion.